ANTOINETTE CONKLIN, PLAINTIFF IN ERROR, V. THE STATE, DEFENDANT IN ERROR.

**Criminal Law:** AUTREFOIS ACQUIT. The plaintiff in error was brought to trial before the district court and a jury upon an information for murder in the first degree. The jury, after being sworn, hearing the evidence and charge of the court, retiring and deliberating upon their verdict, were discharged by the court without agreeing upon a verdict. Upon being placed on trial a second time, she offered her plea of former acquittal, in which she alleged that, at the May, 1887, term of said court, the county attorney of said county presented his information against her for the same offense with which she now stands charged; that she was duly arraigned in said court on said information, and plead not guilty thereto; that thereupon a jury was duly empaneled and sworn in said cause, and the evidence on the part of the state as well as the defense was all introduced and submitted to said jury; that the jury was thereupon instructed by the court, and that thereupon the jury, in charge of a bailiff of said court, retired to deliberate upon their verdict, and that after said jury had been out a space of twenty hours, and no more, without agreeing on a verdict, they were brought into court, when said jury were discharged by the court without agreeing on a verdict, and without disagreeing, or any other special cause, there being no special necessity for discharging said jury; that defendant then and there objected and protested; which said plea was accepted by the court, and to which the county attorney on the part of the state presented and filed a general demurrer. The demurrer was sustained, and the defendant again tried and convicted of murder in the second de-

gree. On error to this court, *Held*, That the district court erred in sustaining the said demurrer. Judgment reversed and cause remanded with instructions to overrule said demurrer, and for further proceedings.

ERROR to the district court for Frontier county. Tried below before COCHRAN, J.

*Lewis & Selby* and *W. S. Morlan*, for plaintiff in error, cited: *State v. Shuchardt*, 18 Neb., 454. *Dobbins v. State*, 14 Ohio State Rep., 493. 1 Bish. Crim. Proc., Sec. 821.

*William Leese, Attorney General, J. M. Stewart*, and *G. M. Stewart*, for defendant in error, cited: Bliss on Code Pleadings, Sec. 418. *Attorney General v. Foote*, 11 Wis., 14. 1 Wharton Evidence, Sec. 325, note 8.

COBB, J.

An information was made in the district court of Frontier county against Antoinette Conklin, charging her with having murdered one Emma May Conklin, by means of administering to her an unknown quantity of strychnia, a deadly poison. The defendant filed a plea in abatement to the said information, to the effect that she, the said defendant, was, and at all times since the date of the alleged offense had been, a resident of said county, and at no time had she been a fugitive from justice from this state, and that she had never had a preliminary examination of or for the offense charged in said information, as provided by law, or otherwise, before a justice of the peace or other examining officer or magistrate, and that she had never waived her right to such preliminary examination, which plea was by the said court overruled. Thereupon the said defendant entered a plea of not guilty, and thereupon a trial was had to a jury, which was duly empaneled and sworn. After hearing the evidence, which occupied parts of two days, and listening to the arguments of counsel and

50

the instructions of the court, the jury retired in charge of an officer to consider of their verdict. On the following day, as appears by the record, the jury came into court and reported, in open court, their inability to agree upon a verdict; "and it appearing to the satisfaction of the court, upon examination of M. L. Brown, one of the jurors in said case, that by reason of his sickness he was unable to further perform his duties as a juror, and upon further examination of each and every juror in said case, the court finds that there is no probability of the jurors agreeing upon a verdict, and that they have been out twenty-one hours without sleep, or a suitable place to sleep or rest, said jury is therefore discharged without day, without prejudice to the prosecution."

At the next term of said court, it appearing to the said court that the said defendant was without means or ability to employ counsel for her defense, it appointed counsel to defend her. Thereupon the said defendant presented and filed a plea in abatement, setting up her former trial and the discharge of the jury, without their agreeing upon a verdict, as an acquittal of her of the charge contained in the said information. The said plea, after setting up and alleging the presentation by the county attorney of the said information against her, her plea of not guilty thereto upon her regular arraignment, the empaneling and swearing of a jury to try her upon the said information, the introduction of evidence, as well on the part of the defense as upon that of the state, the delivery of instructions of the law of the case by the court to the jury, the retiring of said jury in the charge of a bailiff of said court to deliberate upon a verdict, continues as follows: "And that after said jury had been out a space of twenty hours, and no more, without agreeing on a verdict, they were brought into court, when said jury was discharged by the court without agreeing on a verdict, and without disagreeing, or any other special cause, there being no special necessity

for discharging said jury; that at the time of said discharge the defendant objected thereto, and said jury was discharged over the protest and objections of said defendant." To this plea the county attorney entered a general demurrer, which was sustained by the court.

Thereupon there was a second trial to a jury, which found the defendant guilty of murder in the second degree. Her motion for a new trial, as well as her motion in arrest of judgment, having been presented and overruled, she was by the court sentenced to confinement in the penitentiary at hard labor for the term of ten years. The defendant brings the cause to this court on error, and assigns the following errors:

1. The court erred in overruling defendant's plea in abatement.

2. The court erred in sustaining the demurrer to the defendant's plea of former acquittal.

3. The court erred in giving the 8th and 9th paragraphs of the instructions given by the court on its own motion.

4. The court erred in giving the 13th, 14th, and 15th paragraphs of the instructions asked to be given by the state.

5. The court erred in refusing to give the 3d instruction asked to be given by the plaintiff in error.

6. The court erred in refusing to give the 16th instruction asked by the plaintiff in error.

7. The court erred in refusing to give the 15th instruction asked by the plaintiff in error.

8. The court erred in refusing to give the 10th instruction asked by the plaintiff in error.

9. The court erred in refusing to give the 8th instruction asked by the plaintiff in error.

10. The court erred in refusing to give the 5th instruction asked by the plaintiff in error.

11. The court erred in refusing to give the 4th instruction asked by the plaintiff in error.

12.   The court erred in refusing to give the 2d instruc-
tion asked by the plaintiff in error.

13.   The court erred in refusing to give the 1st instruc-
tion asked by the plaintiff in error.

14.   The verdict is not sustained by sufficient evidence.

15.   The verdict is contrary to law.

16.   The court erred in overruling the defendant's mo-
tion for a new trial.

17.   The court erred in overruling the defendant's mo-
tion in arrest of judgment.

As the record stood when first brought to this court, it
was doubtless amenable to the objection set out in the first
assignment of error, but before the submission of the cause
the attorney general suggested a diminution of the record,
and by leave of the court filed an amended record, from
which it appears that, before the filing of the information
the defendant was arrested upon a warrant issued by the
coroner of Frontier county, charged with feloniously caus-
ing the death of Emma May Conklin, then lying dead;
that she was brought before James F. Fenton, a justice of
the peace in and for said county; that by her attorney she
waived examination, and by order of the said justice en-
tered into a recognizance in the sum of $500, with sureties,
for her appearance before the district court, etc., which was
accepted by the said justice.   The first clause of section
585 of the .criminal code provides that, "no information
shall be filed against any person for any offense, until such
person shall have had a preliminary examination therefor,
as provided by law, before a justice of the peace or exam-
ining magistrate or officer, unless such person shall waive
his right to such examination."   From the said amended
record, it appears that this provision of the statute was
sufficiently complied with.

The second assignment of error presents a question of
great gravity and importance.   Section 485 of the crimi-
nal code provides that, "In case a jury shall be discharged

on account of sickness of a juror, or other accident or calamity requiring their discharge, or after they have been kept so long together that there is no probability of agreeing, the court shall, upon directing the discharge, order that the reasons for such discharge shall be entered upon the journal; and such discharge shall be without prejudice to the prosecution."

In the case at bar, even if sufficient reason for the discharge of the jury existed, it does not appear that the above provision of law was complied with with that strictness required in all criminal proceedings, especially in capital cases. It does not appear that the court ordered that the reasons for such discharge be entered on the journal. The entry appears to have been made by the clerk in the ordinary routine of duty. Had such order been made and entered, then, under the above statute, the entry made in pursuance of such order must have been taken as the true reasons for the discharge, although it should appear, as it does in this case by plea and demurrer thereto, that the discharge was made for other and different reasons. But before passing to the consideration of the plea, let us examine the reasons for the discharge as they appear in the journal entry. I copy the journal entry: "Comes also the jury * * * and report in open court their inability to agree upon a verdict in this cause, and it appearing to the satisfaction of the court, upon examination of M. L. Brown, one of the jurors in said case, that by reason of his sickness he was unable to further perform his duties as a juror, and upon further examination of each and every juror in said case, the court finds that there is no probability of the jurors agreeing upon a verdict, and that they had been out twenty-one hours without sleep, or a suitable place to sleep or rest, said jury is therefore discharged without day, without prejudice to the prosecution."

The sickness of a juror is one of the causes recognized by the statute above quoted for the discharge of a jury, but it is submitted that such sickness is classed with "other acci--

dent or calamity requiring their discharge," and it appears
to me that such sickness must be of a sudden and calamitous
character, and of such a nature as to render his further de-
tention in the jury room manifestly improper.    It does not
appear here that the jury reported the sickness of one of
their number, or that the juror himself claimed to be sick
or incapacitated on account of sickness from further service
on the jury; nor in what the examination of the juror by
the court consisted, nor whether the advice and services of
a physician were had to ascertain and advise the court of
the condition of the juror.

Again, it does not appear that the jury were discharged
solely on account of the sickness of this juror, but, on the
contrary, I think that, taking the whole journal entry to-
gether, it fairly appears that the sickness of the juror was
not such that the court would have discharged the jury for
that cause alone.    If the sickness of this juror was such
that his further service on the jury was impossible, what
was the necessity or even the propriety of further examin-
ing each and every juror as to the probability of their
agreeing upon a verdict, and what the necessity of the con-
sideration by the court of the probability of the jury agree-
ing upon a verdict, the length of time they had been out
without sleep, or a suitable place to sleep or rest?

The statute recognizes the necessity, as in some cases
existing, of discharging a jury for the reason that they have
been kept out so long that there is no probability of agree-
ing upon a verdict.

In the case of *The State v. Shuchardt*, 18 Neb., 454, the
statute governing cases of this kind was thoroughly dis-
cussed in the opinion by Judge MAXWELL.    In that case,
which was not a capital one, the jury were sent out at
about 7 P.M. of Saturday, and about 6 A.M. of Sunday
reported to the judge that they were unable to agree,
whereupon he discharged them, without notice to or the
consent of either the defendant or his attorney, but in the

absence of both.   The defendant afterwards filed a plea in
abatement, setting up the above facts.   An issue was joined
thereon, testimony was taken, and the court finding the
issues in favor of the defendant, discharged him.   A writ
of error was allowed on the application of the district attor-
ney, and the cause brought to this court for the purpose
only of settling the law and practice in such cases.   In
the opinion the court say:  " When a jury is empaneled
the state must proceed with the prosecution.   There can
be no nonsuit, as in civil actions.   If the accused cannot
be convicted, he is entitled to a verdict of acquittal; and if,
after the jury has been sworn, and the jeopardy thus begun,
the court, without sufficient cause, discharges them without
a verdict, this in law is equivalent to an acquittal "—citing
numerous authorities.   Among the cases cited by the court,
and which is also cited by counsel for plaintiff in error in
the case at bar, is that of *Dobbin v. The State,* 14 O. St., 493,
a capital case, in which the jury, having deliberated for six-
teen hours, returned into court and propounded a question,
which we assume to have been pertinent to their inquiry,
and having received instructions thereon, retired and de-
liberated for seven hours, when they returned into court and
reported that they could not agree upon a verdict.   In
that case, as in the one at bar, the jury were discharged
over the objection of the defendant.   In the exhaustive
opinion of Judge Ranney, the court say:  "Counsel for
the plaintiff very justly and necessarily concede that a case
of *necessity* may exist, which would legally justify the
course taken in this instance; but they insist that such a
case can only arise when some intervening impediment
has necessarily stopped the progress of the first trial before
verdict; that the power of discharging a jury in a crim-
inal, and especially in a capital case, is a delicate and highly
responsible trust, to be exercised, on account of the dis-
agreement of the jury, only when they have deliberated so
long as to preclude all reasonable expectation that they

will ever agree upon a verdict, without being compelled to do so from famine or exhaustion; that this power does not rest upon the arbitrary or uncontrollable discretion of the judge presiding at the trial, but is a *legal* discretion, to be exercised in conformity with known and established rules; and finally, that unless the facts stated in the record clearly establish a case of *necessity*, the discharge will operate as an acquittal of the accused, and preclude his further prosecution. Abating something from the claim made as to what must, of necessity, affirmatively appear in the record, we have no hesitation in yielding to these propositions our entire assent."

In the case of *The State v. Shuchardt, supra,* the court say: " It never was intended to permit a court arbitrarily to discharge a jury for disagreement until a sufficient time had elapsed to preclude all reasonable expectation that they will ever agree. The county should not be subjected to the expenses incident to a second trial where there is a reasonable probability that a verdict may be reached on the first, while the accused is entitled, as a matter of right, to a verdict in his favor, if after a full and careful consideration of all the testimony, and on comparison of views, the jury should find that the charge was not established by the proof. In this case the jury was discharged after being in consultation only eleven hours. The jury had not then deliberated for so long a time that there was no probability of their agreeing, and the court could not discharge them on that ground alone, without the assent of the defendant."

It will be remembered that in the case at bar, as appears by the journal entry above quoted, two reasons were assigned for discharging the jury. If one of these reasons, taken alone, is good and sufficient, it cannot but be admitted that it would remain sufficient, notwithstanding the assignment of the other, but if neither one of them alone is sufficient, it cannot be pieced out and completed by the

other cause or reason, of itself deemed insufficient. In most of the cases where it has been held that the court was justified in discharging the jury for the reason that they had been out so long that it was improbable that they would agree, the near approach of the final adjournment of the court for the term has been a fact which has influenced such consideration.

The record in the case at bar furnishes no data showing how much of the term remained at the time of the discharge of the jury. But it appears on the face of the journal entry that the court did not discharge the jury for the reason alone that they had been out so long that there was no probability of their agreeing, nor yet for that together with the sickness of a juror, but in addition to these two reasons, that the jury had been out twenty-one hours without sleep or a suitable place to sleep or rest. For aught that appears, the latter was the controlling reason for the discharge of the jury. While I will not undertake to say what accommodations, either for sleep or rest, it is incumbent upon the public authorities to furnish jurors, I think it may be safely said that they cannot be deprived of such conveniences and make that fact a cause for discharging the jury before the completion of the duties for which they are empaneled, without thereby entitling the accused to her defense of formal acquittal.

But in the case at bar, before being placed on trial a second time, the accused presented a plea of former acquittal, in which she set up all the preliminary facts necessary in such plea, "and that after the jury had been out a space of twenty hours, and no more, without agreeing upon a verdict, they were brought into court and were discharged, without agreement or disagreement, or for any other special cause, there being no special necessity for discharging said jury," and that she then and there objected to their discharge. To this plea the county attorney entered a general demurrer.

In the case of *The State v. Shuchardt, supra,* which was permitted to be brought to this court, by the state, for the purpose of settling questions of law and practice in like cases, a similar plea was presented, and such practice approved by the court, following the law as laid down by Bishop, First Crim. Proceed., Sec. 828, and cases there cited. But in Shuchardt's case the district attorney, instead of demurring, and thus admitting the truth of the facts pleaded, took issue thereon, and submitted the issue to a trial by the court. Following the law of that case, we must regard the facts stated in the plea as the cause, and the only cause, for the discharge of the jury. These are simply, that "the jury had been out a space of twenty hours, and no more, without agreeing upon a verdict." These facts, alone, fail to furnish a sufficient reason for such discharge.

My own individual conclusions from the foregoing facts and premises would be, that the defendant having been put on trial before a jury, and a trial had upon the merits, and thus placed in jeopardy of life, and the jury discharged without sufficient cause without agreeing upon a verdict, she was in law acquitted of the offense of which she was charged. But the majority of the court take another and different view, which is, that the district court erred in sustaining the demurrer to the defendant's plea of former acquittal; that the same should have been overruled, the state required to answer thereto, and the issue thus presented tried and decided, and if decided adversely to the defendant's plea, she might be lawfully again put upon her trial, and that while said plea remains undecided on its merits against the defendant, she cannot lawfully be subjected to another trial.

The judgment of the district court is therefore reversed, and the cause remanded, with instructions to overrule the said demurrer; that if the state has any answer to make to said plea to receive the same, and try the issue thereby

presented, and for such further proceedings as are agreeable to law.

JUDGMENT ACCORDINGLY.

MAXWELL, J., concurs.

REESE, CH. J., dissenting.

While I agree to the judgment in this case, I do not agree to all the conclusions contained in the opinion of the majority.

The plea in bar having been assailed by demurrer, must be taken as true, and therefore the demurrer should have been overruled. But I think the record sufficiently shows that section 485 of the criminal code was sufficiently complied with by the district court, in entering upon its journal the reasons for the discharge of the jury in the former trial. That section provides that the court shall, upon directing the discharge of the jury, order that the reason for such discharge shall be entered upon the journal, and such discharge shall be without prejudice to the prosecution.

The journal entry is substantially copied in the opinion of the majority, and it is shown thereby that the court was satisfied upon the examination of M. L. Brown, one of the jurors, that by reason of his sickness he was unable to further perform his duties as a juror. This, under the section above referred to, was sufficient to justify the discharge of the jury without prejudice to the prosecution. But the district court, out of abundant caution, perhaps, examined each of the jurors as to the probability of an agreement, doubtless for the purpose of ascertaining whether such agreement could be had at once, or without detaining the sick juror longer than he should be detained, and upon such examination ascertained that there was no probability of the jury agreeing upon a verdict, notwith-

standing they had been out twenty-one hours without sleep, and without suitable or proper accommodation. While it is true that all probabilities of an agreement should be exhausted before a jury is discharged in a capital case, or, perhaps, even in any case of felony, yet I think that there was no abuse of discretion in discharging the jury, even though the juror Brown had not been unable to proceed further. And in this respect the action of the district court, under the circumstances, in discharging the jury, was right. Again, I think the record sufficiently shows that the court complied with that part of the section under consideration, which requires it to order that the reasons for the discharge be entered upon the journal.

Section 27 of chapter 19 of the Compiled Statutes, entitled "Courts," provides that the clerk of the district court shall keep a record of the proceedings of the court, under the direction of the judge. It is the duty of the judge to see that entries are properly made upon the journal, that all orders of the court in that behalf be complied with, and that when so entered they shall be read in open court, and if correct, signed by the judge.

The clerk is simply a ministerial officer of the court. The proceedings of the court cannot be entered by him unless it be under the direction of the judge. The entries made in the record before us were made "under the direction of the judge," therefore by his order. It seems to me that a rule requiring that the record should show that the court ordered an entry to be made which can be made alone by his direction, would be anomalous. The fact that the entry was made is, to my mind, conclusive that it was made by the "order" of the court. The reason for the discharge being, it seems to me, ample, and the record, by every intendment, showing that they were entered by the order of the court, the discharge was without prejudice to the prosecution.