[No. 7849.   Decided August 25, 1909.]

The State of Washington, *Respondent*, v. Hezekiah W. Barnes, *Appellant*.[1]

Criminal Law—Former Jeopardy—Discharge of Jury—Necessity—Discretion of Court.   A plea of former jeopardy is properly overruled, where it is based on the fact that at a former trial a jury was discharged on the statement of the foreman that the jurors could not agree upon the question of the sanity of the prisoner at the time of the commission of the offense, unless the court would instruct them as to whether the prisoner would be imprisoned for life or might be subsequently released; since the necessity for such a discharge is a matter within the sound discretion of the trial court, and no abuse of discretion appears where the jury had already deliberated forty-three hours.

Jury — Drawing Jury — Directory Provisions — Appeal—Harmless Error.   Statutory provisions for the drawing of a panel are mainly directory, and failure to precisely conform thereto will not warrant a reversal of a conviction, where none of the jurors were incompetent or improperly drawn, no prejudice against the defendant was shown or any of his rights injuriously affected, and he declined to use an additional challenge accorded him.

Same—Challenge to the Panel—For Cause.   A challenge to the panel is not sustainable by reason of the drawing of three jurors who had served on a former trial, since they could be challenged for cause.

Appeal from a judgment of the superior court for Walla Walla county, Brents, J., entered July 6, 1908, upon a trial and conviction of the crime of murder in the first degree.   Affirmed.

*E. F. Barker, Oscar Cain,* and *E. C. Mills,* for appellant.

*Otto B. Rupp, Herbert C. Bryson,* and *Thomas Phelps Gose,* for respondent.

Crow, J.—The defendant, Hezekiah W. Barnes, having been charged with the crime of murder in the first degree and convicted, judgment and sentence were entered, and he has appealed.

[1]Reported in 103 Pac. 792.

By his first assignment of error appellant contends that his plea of former acquittal should have been sustained, and that he should have been discharged by the trial court. The record shows that, on May 22, 1908, an information was filed charging him with the crime of murder in the first degree; that the case was first called for trial in June, 1908; that on June 13 it was submitted to the jury; that about ten o'clock a. m. on June 15 the jury were called into court, when the following proceedings were had:

"The Court: Gentlemen, have you agreed upon a verdict? Foreman: Your Honor, we fail to agree. The Court: What appears to be the difficulty? Foreman: The gentlemen appear to have a difference of opinion. The Court: Do your difficulties arise with regard to the whole case or to some particular branch of it? Foreman: The insanity part. The Court: Do you find beyond a reasonable doubt that the crime was committed by the defendant? Foreman: The crime has been committed. The Court: The question with you is whether the defendant— Foreman: —was sane or insane. The Court: At the time of its commission? Foreman: Yes, sir. . . . The Court: Gentlemen, you may retire and I will formulate some further instructions in regard to that branch of the case and try to explain to you what I think possibly you may have overlooked, and will call you in again later. (The jury retire.) Mr. Garrecht [attorney for appellant]: We will ask for an objection to any further instructions where the jury has not asked for any further instructions. The Court: Call in the jury. (The jury return to the court room). The Court: Gentlemen of the jury, I will ask you whether you wish me to instruct you any further. If not, if you fully understand my former instructions, I will not instruct you any further. Foreman: I will state, Judge, that the difference of opinion comes up in regard to the incarceration of the prisoner in the case of insanity, for life—life punishment; whether there's any chance of him being restored to liberty after he is incarcerated for a short time, or whether the committing of the crime will carry with it the life sentence. The Court: I cannot give you what the law is in regard to it now. I have got to give it to you in writing. That is the only point upon which you wish me to instruct you? Foreman: I think that being solved we can

come to an agreement. With those instructions we are perfectly willing to retire and wait. Mr. Cain [attorney for appellant] : We have no objections to the court's instructing them on that point orally. You can read to them the section of the statute that covers it. The Court: I won't unless I am given full liberty, because I might say something that you might construe into something else. Foreman: We would rather have them in writing. The Court: I can't give them to you to read; I will have to read them to you. (Jury retire). . . . .

"(Jury are recalled). The Court: Gentlemen, as I understand your foreman, you have agreed that the defendant committed the crime charged in the information, but you have not agreed as to whether he was sane or insane at the time of its commission; and I further understand from him that your finding upon that question depends upon whether the defendant can be imprisoned for life or whether he can be discharged at any time. Is that the state of the case? Foreman: That is the case. The Court: And without that knowledge as to whether he can be incarcerated for life or whether he can be discharged at any time, you think that you are unable to agree upon a verdict and will be unable to agree? You think that there will be no reasonable prospect of an agreement? Foreman: No, sir. The Court: I feel constrained, in view of these statements of yours, to discharge you from further consideration of the case. The fact that you are making your verdict in this case dependent upon the punishment, or what might be done with this defendant after this trial, satisfies me that you should not consider this case at all. It is not a matter for your consideration whether he would be discharged or not discharged. The law is, however, that he, upon certain contingencies, may be discharged at any time that he is restored to sanity, if you should find him to be insane; upon doing certain things, or upon certain things happening, that he could be restored to his liberty. But that ought not to enter into your consideration at all. It has nothing to do with the question of whether he was sane or insane at the time he committed the act. It goes to his punishment; and, in other words, to be plain and curt with you, it is none of your business; it is the business of the law; and I, therefore, seeing that you cannot agree without taking that matter into consideration (which

is entirely improper to take into consideration) feel that I would be doing the prisoner and the public both a great injustice to allow you to determine his guilt or innocence upon a question of that kind; and I therefore discharge you from further consideration of the case."

The case was again called for trial on June 24, 1908. The appellant then filed a plea of former jeopardy, in which he claimed that the discharge of the jury amounted to an acquittal. The state answered, the appellant demurred, the demurrer was overruled, and the appellant replied. Upon the second trial it was agreed that the plea of former jeopardy should be submitted to the jury. Two verdicts were returned, one finding the appellant guilty of murder in the first. degree, and the other finding that he had not been placed in jeopardy or acquitted.

Appellant concedes that in a criminal case a trial court may, when necessary, discharge a jury that has failed to agree, without effecting an acquittal. He contends, however, that no such necessity arose in this cause; that the discharge was not demanded by imperious necessity; that it was made without his consent, and that it operated as. an acquittal, barring further trial. To support this contention, he cites the following authorities: *McCorkle v. State*, 14 Ind. 39; *State v. Wamire*, 16 Ind. 357; *Commonwealth v. Fitzpatrick*, 121 Pa. St. 109, 15 Atl. 466, 6 Am. St. 757, 1 L. R. A. 451; *State v. McKee*, 1 Bailey Law 651, 21 Am. Dec. 499; *Conklin v. State*, 25 Neb. 784, 41 N. W. 788; *People v. Parker*, 145 Mich. 488, 108 N. W. 999; *Hines v. State*, 24 Ohio St. 134; *State v. Klauer*, 70 Kan. 384, 78 Pac. 802; *State v. Allen*, 59 Kan. 758, 54 Pac. 1060; *State v. Reed*, 53 Kan. 767, 37 Pac. 174, 42 Am. St. 322. These authorities, in so far as they tend to support the appellant's contention, are the outgrowth of the rule adopted in criminal cases by the early English courts, to the effect that a jury sworn and charged in a case of life or member, cannot be discharged by the court or any other, but that they ought to give a verdict. At an early date the courts of this coun-

try refused to adopt or follow this rule, but held that when the jury could not agree on a verdict, the court had discretionary power to discharge them, and that the prisoner might be put on his trial before another jury. *Commonwealth v. Purchase*, 2 Pick. 521, 13 Am. Dec. 452.

There is, however, some conflict of authority in American courts on the question as to whether on their failure to agree, the discharge of the jury without the consent of the defendant will, in a criminal case, bar another trial. The courts of a few states hold that a bar will result, and the most pertinent cases cited by the appellant are from such courts. Most of the American authorities have announced the rule that the power to discharge the jury is within the sound discretion of the trial judge, and that his exercise of such discretion will not be reviewed by the appellate courts, unless its clear abuse appears. *State v. Costello*, 29 Wash. 366, 69 Pac. 1099; *United States v. Perez*, 9 Wheat. 579, 6 L. Ed. 165; *In re Allison*, 13 Colo. 525, 22 Pac. 820, 16 Am. St. 224; *State v. Harris*, 119 La. 297, 44 South. 22, 11 L. R. A. (N. S.) 178, and note; *Simmons v. United States*, 142 U. S. 148, 12 Sup. Ct. 171, 35 L. Ed. 968; *Thompson v. United States*, 155 U. S. 271, 15 Sup. Ct. 73, 39 L. Ed. 146; *Dreyer v. People*, 188 Ill. 40, 58 N. E. 620, 59 N. E. 424, 58 L. R. A. 869; *Penn v. State*, 36 Tex. Cr. App. 140, 35 S. W. 973; *Anderson v. State*, 86 Md. 479, 38 Atl. 937; *State v. Crump*, 5 Idaho 166, 47 Pac. 814; *United States v. Jim Lee*, 123 Fed. 741; *State v. Keerl*, 33 Mont. 501, 85 Pac. 862.

In *State v. Costello, supra*, the jury had deliberated from 1:40 p. m. on Tuesday until 9:30 a. m. on Wednesday, when they were called into court, reported they had not agreed, that there seemed to be no prospect of agreement, and were discharged. This court, in discussing the plea of former jeopardy, interposed on a subsequent trial, said:

"The statute provides (Bal. Code, § 5006), 'The jury may be discharged by the court   .   .   .   by consent of both

parties, or after they have been kept together until it satisfactorily appears that there is no probability of their agreeing.' By this section the lower court is invested with a discretion to discharge a jury after it has been kept together until it satisfactorily appears that there is no probability of their agreeing. This discretion must be based upon substantial grounds, and is subject to review like any other legal discretion. It appears here that the jury had been considering the case for more than nineteen hours, and that when asked by the court if there was any prospect for an agreement, answered, 'It seems not,' and stated, 'We have stood one way for twelve hours.' While in the question put by the court the word 'probability' is not used, still we think the question and the answer clearly indicate that there was no reasonable probability of an agreement, and that, under the conditions existing, the court did not abuse his discretion in discharging the jury."

In *Simmons v. United States, supra,* the court said:

"The general rule of law upon the power of the court to discharge the jury in a criminal case before verdict, was laid down by this court more than sixty years ago, in a case presenting the question whether a man charged with a capital crime was entitled to be discharged because the jury, being unable to agree, had been discharged, without his consent, from giving any verdict upon the indictment. The court, speaking by Mr. Justice Story, said: 'We are of the opinion that the facts constitute no legal bar to a future trial. The prisoner has not been convicted or acquitted, and may again be put upon his defense. We think that, in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. *They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere.* To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life in favor of the prisoner. But, after all, they have the right to order the discharge; and

the security which the public have for the faithful, sound, and conscientious exercise of this discretion rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office.' *United States v. Perez*, 9 Wheat. 579."

The appellant most strenuously insists that, in this case, no necessity appeared for the discharge of the jury which was arbitrarily ordered without his consent. He further insists that a reasonable inference from all the proceedings would be, that had the jury been instructed to the effect that the question of punishment could not enter into their consideration, they would, on further deliberation, have been able to reach a verdict, and that their discharge violated his rights and constituted an acquittal. The record indicates that, on first impulse, the trial judge did contemplate preparing and giving written instructions as to the disposition of the appellant, in the event of his being found insane, and advising the jury whether he would thereafter be permanently deprived of his liberty. It is evident, however, that upon reflection he reached the conclusion that the question involved in such an instruction was not proper for their consideration, and should in no way influence or control their verdict. He then recalled the jury, and was informed by them that, without any knowledge as to whether the appellant would be imprisoned for life or discharged if found insane, they would be unable to agree. Thereupon, in the exercise of his sound discretion, based on these substantial grounds, he discharged the jury. They had already deliberated for more than forty-three hours, and announced that they could not agree unless given an instruction to which they were not entitled. Under these circumstances, we would not be justified in holding that the trial judge erred, or that he abused his discretion.

Nor should we order the discharge of the appellant who was convicted on his second trial. The trial judge was familiar with the trial, its proceedings, the evidence, and the personality of the jurors. He had opportunities for under-

standing the situation, not afforded this court, and was in a
better position to determine whether the jury might agree.
The foreman's first statement was that they had failed to
agree.  He further stated that they had no doubt the crime
had been committed, and that their differences arose on the
issue of appellant's sanity, because they did not know what
punishment would be inflicted if they found him insane.  The
reasonable inference was that, if they were advised what that
punishment would be, they might be able to determine ap-
pellant's sanity or insanity, but that without such knowledge
they would be unable to do so.  It certainly would have been
improper for the trial court to have aided them in reaching a
verdict by any such method or to have instructed them as re-
quested, with that object in view.  The trial judge exer-
cised his discretion in discharging the jury.  There is no
showing of any abuse of such discretion, and his action must
be sustained.

The appellant interposed the following objections and
challenges to the panel of jurors:   (1) That the lists of
jurors drawn on May 7, June 5, and June 17, 1908, were
not compared and checked in open court with the list pre-
viously prepared by the jury commissioners, and that they
were not entered upon the journal or certified by the clerk.
(2) That the names of E. F. Cormick and W. Castell were
drawn from the jury box although the recorded list of jurors
previously selected by the commissioners did not include
their names.   (3) That on June 15, 1908, the court finally
discharged the jury.   (4) That the names of Leo Fergu-
son, Frank J. Kent, and Woodson Cummings were drawn
in a list of one hundred names ordered by the trial court;
that each of their names had been previously drawn on
May 9, 1908; that Leo Ferguson and Frank J. Kent had
each served as a juror on appellant's former trial, and that
Woodson Cummings was examined on the former trial, and
excused for cause.  No question is raised as to the regularity
or validity of the acts and proceedings of the jury commis-

sioners in selecting and placing names in the jury box, or in the discharge of their duties. It is not suggested that the jurors who tried and convicted the appellant were not competent and qualified; that any of their names had not been originally and properly selected by the commissioners and placed in the jury box, or that they were not afterwards drawn therefrom in obedience to the order of the trial judge. Appellant's objections to the panel appear to be purely technical, reaching only the manner and form of drawing the array. After presenting and reading his written challenge, the appellant offered to introduce proof in its support. The trial judge in denying the challenge and excluding the proof, said:

"There is some of this incorrect probably, but there are some of your points that I think are not well taken. We might as well abolish our courts entirely and give up the trial of cases if we are to literally follow everything in that jury law, and it is almost an impossibility, and we have complied with it as nearly as practicable, and you get a fair jury and if you do, I think that the purpose of the law has been carried out as far as it is practicable."

Appellant contends these irregularities in the drawing of names were fatal, being in violation of the act relating to the selection of jurors, Laws 1905, ch. 146, page 270. We make reference to the act mentioned, but shall not enter upon a detailed statement of its provisions. While they should be observed as closely as practicable so that a competent, impartial and honest jury may be secured, it does not follow that an inadvertent failure to comply with every directory provision will vitiate a panel, unless it is made manifest that some omission prejudicial to the appellant has occurred.

"The manner in which the jury panel shall be drawn is regulated in the different jurisdictions by statutory provisions, which are in most respects merely directory, but which as to their material provisions, designed for securing a fair and impartial jury, must be substantially complied with. . . . The most important requirement is that the panel

shall be drawn and not arbitrarily selected, and any act of this character on the part of the clerk or other officers is ground for challenge to the array." 24 Cyc. 218, 219, and cases cited.

"In some of the states there are decisions to the effect that statutes which prescribe the powers and duties of jury commissioners and corresponding officers to whom is intrusted the selection or drawing of suitable persons as jurors, and which prescribe the time and manner of exercising such powers and performing such duties, are mandatory, and that strict adherence to the statutory requirements is essential to support the regularity and validity of the proceedings. But notwithstanding these decisions the great weight of authority is to the effect that the mere fact that officers intrusted with the several duties prescribed failed to conform precisely to such requirements will not invalidate their action, unless it appears, or may be reasonably inferred from the circumstances, that the complaining party has been prejudiced or that injury has been sustained by reason of neglect or omissions charged. In brief, courts will not sanction a palpable disregard of essential statutory provisions nor overlook material departures therefrom, but if there is a substantial compliance with the statutes, mere irregularities in the procedure, or mere informalities on the part of the officers charged with the selection and drawing, will be deemed unimportant." 12 Ency. Plead. & Prac. 276-8.

There is nothing in the record to show any prejudice against the appellant in the selection of the jury. If the statute had been strictly complied with, the indications are that the identical jurors before whom the appellant was tried would have been chosen, and it has not been made apparent that any of his rights were injuriously affected by the form or manner in which they were actually selected. The record fails to show that any jurors, other than those who served on the first trial, were discharged. It does show that after the appellant had exhausted all peremptory challenges to which he was entitled, the trial judge accorded him an additional one which he used; that a further one was tendered him; that he declined to use it, and that he accepted the

jury. These additional peremptory challenges accorded him privileges to which he was not entitled under the statute, and in the absence of any showing of prejudice the action of the trial court denying his challenge to the entire panel must be sustained. 1 Thompson, Trials, §§ 33, 34. No palpable abuse of appellant's rights, nor improper conduct of those participating in the trial, or of any other person, has been shown. Nothing in the record warrants any inference of fraud or attempted fraud. The three jurors who had been called for the first trial were subject to challenge for cause, and could have been thus reached without the necessity of a challenge to the array. *State v. Straub*, 16 Wash. 111, 47 Pac. 227; *State v. Krug*, 12 Wash. 288, 41 Pac. 126; *State v. Vance*, 29 Wash. 435, 70 Pac. 34; *State v. Croney*, 31 Wash. 122, 71 Pac. 782; *Sharp v. United States*, 13 Okl. 522, 76 Pac. 177; *People v. Sowell*, 145 Cal. 292, 78 Pac. 717; *People v. Richards*, 1 Cal. App. 566, 82 Pac. 691; *State v. Ju Nun* (Ore.), 97 Pac. 96.

The appellant has assigned error on a portion of the instructions given by the trial judge on the defense of insanity. The evidence on this defense has not been included in the statement of facts or made a part of the record, as it should have been, to aid us in reaching a correct conclusion on this assignment. We will say, however, that we find no error in the court's instructions on the issue of insanity, as the entire body of the instructions given show that it was fairly and properly submitted to the jury.

The judgment is affirmed.

RUDKIN, C. J., MOUNT, FULLERTON, and CHADWICK, JJ., concur.

DUNBAR, GOSE, PARKER, and MORRIS, JJ., took no part.