553 A.2d 244

**David Allen ERDMAN**

v.

**STATE of Maryland.**

**No. 79, Sept. Term, 1988.**

Court of Appeals of Maryland.

Feb. 14, 1989.

Mark Colvin, Asst. Public Defender (Alan H. Murrell, Public Defender, both on brief), Baltimore, for petitioner.

Ann N. Bosse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS, BLACKWELL, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (Retired), Specially Assigned.

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

# I

## (A)

In a criminal cause "[a] defendant may plead not guilty, guilty, or, with the consent of the court, nolo contendere. In addition to any of these pleas, the defendant may interpose the defense of insanity as permitted by law." Md.Rule 4–242(a).

If a defendant intends to rely on a plea of not criminally responsible, the defendant or defense counsel shall file a written plea alleging, in substance, that when the alleged crime was committed, the defendant was not criminally responsible by reason of insanity under the

test for criminal responsibility in § 12–108 of [Title 12 of the Health–General Art. (HG), Md.Code (1982, 1988 Cum. Supp.) ].

Md.Code (1982, 1988 Cum.Supp.) § 12–109(a)(1) of the Health–General Article.

A defendant is not criminally responsible for criminal conduct if, at the time of that conduct, the defendant, because of a mental disorder or mental retardation, lacks substantial capacity:

(1) To appreciate the criminality of that conduct; or

(2) To conform that conduct to the requirements of law.

*Id.,* § 12–108(a).[1] "The defendant has the burden to establish, by a preponderance of the evidence, the defense of not criminally responsible." HG § 12–109(b).

If the trier of fact finds that the State has proved beyond a reasonable doubt that the defendant committed the criminal act charged, then, if the defendant has pleaded not criminally responsible, the trier of fact separately shall find, by a preponderance of the evidence, whether the defendant was at the time criminally responsible or not criminally responsible by reason of insanity under the test for criminal responsibility in § 12–108 of this title.

HG § 12–109(c).

### (B)

▉ Acts 1984, Ch. 501, § 2, make "a major change in the law related to the disposition of a defendant who has

---

1. " 'Mental disorder' means a behavioral or emotional illness that results from a psychiatric or neurological disorder." Md.Code (1982, 1988 Cum.Supp.) § 12–101(f)(1) of the Health–General Article. It "includes a mental illness that so substantially impairs the mental or emotional functioning of an individual as to make care or treatment necessary or advisable for the welfare of the individual or for the safety of the person or property of another." *Id.,* § 12–101(f)(2). It "does not include mental retardation," *id.,* § 12–101(f)(3), and for the purposes of HG § 12–108, "does not include an abnormality that is manifested only by repeated criminal or otherwise antisocial conduct." HG § 12–108(b).

established mental disorder or mental retardation sufficient to be found not criminally responsible." Task Force Comment to HG § 12–111. *See Treece v. State*, 313 Md. 665, 686, 547 A.2d 1054 (1988). The Comment explains:

> The former law authorized the court to immediately commit the defendant to the Department but only for a limited time for the purpose of examination and evaluation. This was followed by a hearing, similar to the procedure for civil involuntary commitment, at which the State was required to prove by clear and convincing evidence that the individual was presently suffering from a mental disorder or mental retardation and was as a result dangerous.

For the relevant statutory background of Acts 1984, Ch. 501, *see Anderson v. Dept. of Health and Mental Hygiene*, 310 Md. 217, 220–222, 528 A.2d 904 (1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1088, 99 L.Ed.2d 247 (1988). The 1984 Act states that the court, after a verdict of not criminally responsible, "immediately shall commit the defendant to the Department [of Health and Mental Hygiene] for institutional, inpatient care or treatment." HG § 12–111(a). The court may order that such individual be released instead of committed "only" upon clearly spelled out conditions, namely:

> (1) The court has available an evaluation report within 90 days preceding the verdict made by an evaluating facility designated by the Department;
>
> (2) The report indicates that the individual would not be a danger, as a result of mental retardation or mental disorder, to self or to the person or property of others if released, with or without condition; and
>
> (3) The individual and the State's Attorney agree to the release and to any conditions for release that the court imposes.

HG § 12–111(c). Thus, the law provides in certain language that an individual found to be not criminally responsible is to be automatically committed to the Department of Health and Mental Hygiene to be confined in a psychiatric institu-

tion until such time as he proves eligibility for release. As we pointed out in *Treece*, 313 Md. at 686–687, 547 A.2d 1054, the 1984 Act markedly "increas[ed] the chances of lengthy indefinite confinement for a defendant found not criminally responsible...." For the underlying rationale which permits the State to so authorize, *see* Task Force Comment to HG § 12–111. And *see Jones v. United States*, 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983). The State's Attorney must be informed from time to time of the status of the committed individual. HG § 12–112(b)(1) provides:

(1) The facility of the Department that has charge of the committed individual shall notify the State's Attorney any time a committed individual:

(i) Is transferred;

(ii) Is approved for temporary leaves of more than 24 hours; or

(iii) Is absent without authorization.

"For information purposes, a copy of the notice shall be sent for inclusion in the court file and to counsel for the committed individual." HG § 12–112(b)(2).

HG § 12–113 sets out strictures for the release of a committed individual. He has "the burden to establish by a preponderance of the evidence eligibility for discharge or eligibility for conditional release." *Id.*, subsection (d). He is eligible for discharge or conditional release *only* if he "would not be a danger, as a result of mental disorder or mental retardation, to self or to the person or property of others...." *Id.*, subsections (b) and (c). Sections 12–114 through 12–121 establish the procedures relating to discharge or conditional release. They serve to insure, with reasonable certainty, that a committed individual will be discharged or conditionally released only if he would not be a danger to self or to the person or property of others.

## II

The drama of David Allen Erdman, played in the Circuit Court for Baltimore County, followed the scenario of the

statutes and rules concerning criminal responsibility. He pled not guilty to a variety of criminal offenses and, in addition, interposed a plea of not criminally responsible. He was convicted by a jury of robbery with a deadly weapon and an assortment of other crimes. The jury separately found that he was criminally responsible for his criminal conduct. A substantial term of imprisonment was imposed.

On appeal, the Court of Special Appeals affirmed the judgments. *Erdman v. State,* 75 Md.App. 560, 542 A.2d 399 (1988). Erdman questioned two rulings of the trial court relating to the plea of not criminally responsible. The first was the court's denial of his requests for an instruction concerning his disposition if the jury found that he was guilty of criminal conduct but not criminally responsible. The second was the court's refusal to allow the defense to make the final argument to the jury on the issue of criminal responsibility. We granted Erdman's petition for certiorari which requested that we review the determination of the intermediate appellate court that the trial court's rulings were not erroneous.

### III

The instruction which Erdman requested read:

If the defendant is found not criminally responsible, the court will commit the defendant to the Department of Health and Mental Hygiene for institutional inpatient care. In the future, the defendant will be entitled to release from custody of the Department of Health and Mental Hygiene only if this court or a jury finds he will not be a danger to himself or the person or property of another.

We agree with the Court of Special Appeals that "[i]n the circumstances of this case, the proposed instruction appears to be a correct summary of what would have happened to Erdman if he had been found not criminally responsible.... The issue, then, is not the correctness of the instruction but

its relevance." *Erdman v. State,* 75 Md.App. at 563, 542 A.2d 399.

In a thoroughly researched opinion, Wilner, J., speaking for a panel of the Court of Special Appeals, found that there was a "clear and substantial division of authority" throughout the country concerning the propriety of jury instructions with respect to the disposition of a defendant found to be not criminally responsible. *Erdman v. State,* 75 Md.App. at 576, 542 A.2d 399. The court opted, however, to abide by its prior decisions following the traditional view to the effect that the jury was not concerned with the matter of punishment. *See Tripp v. State,* 36 Md.App. 459, 374 A.2d 384, *cert. denied,* 281 Md. 745 (1977); *Brown v. State,* 8 Md.App. 462, 260 A.2d 665 (1970). The court observed, however, that the matter was one of policy that should be decided by the Court of Appeals which had not yet addressed the question. *Erdman,* 75 Md.App. at 576, 542 A.2d 399.

It is correct that there is a "clear and substantial division of authority" among other jurisdictions as to whether the jury should be instructed concerning the disposition of a defendant found to be not criminally responsible. A number of views on the matter have been recognized in the various jurisdictions. One view is that the instruction is not to be given. This stems from the well established doctrine, followed by the Court of Special Appeals, that the jury has no concern with the consequences of a verdict. This Court has recognized the doctrine with respect to the possibility of parole in proceedings involving the adjudication of guilt or innocence, *see Shoemaker v. State,* 228 Md. 462, 473, 180 A.2d 682 (1962), but, as the Court of Special Appeals noted, has not spoken on the matter with respect to criminal responsibility. *See Doering v. State,* 313 Md. 384, 410, 545 A.2d 1281 (1988), which acknowledged the rationale of the doctrine but observed that it was "not directly applicable to proceedings involving determination of sentence by a jury." Some jurisdictions require such an instruction, and, in some, failure to give it is reversible error. Some require it unless

the defendant requests that it not be given. Some require it on request of the defendant. Others leave the giving of the instruction to the discretion of the trial judge. In some jurisdictions the instruction is required by statute. *See* cases cited in *Erdman,* 75 Md.App. at 568 n. 3; 569 nn. 4 & 5; 571 nn. 6 & 7; 572 n. 8, 542 A.2d 399.

In our scanning of the cases, we notice that, no matter what the reasons given or the rationale advanced, there is a correlation between the status of the law with respect to the disposition of a defendant found to be not criminally responsible and the determination whether to inform the jury on the matter. It appears that, usually, the instruction is required or permitted in those jurisdictions in which commitment, in practical effect, is automatic, and the eligibility of the committed individual for release is so structured as to give reasonable assurance that he will not be returned to society while still a danger to himself or to the person or property of others. It seems that an instruction as to disposition is looked upon with disfavor in those jurisdictions in which automatic commitment is not mandated, and it is unclear what disposition, in fact, would be made of the defendant found to be not criminally responsible. So, the weight of authority is not to be ascertained simply by the number of jurisdictions which require or permit the instruction as against the number of jurisdictions which preclude it. The decision in a particular jurisdiction must be viewed in the context of the status of the law with regard to commitment in that jurisdiction. *See Erdman,* 75 Md.App. at 568, 544 A.2d 399. When the cases are examined in that light, a clear majority of the jurisdictions which have mandated commitment require or permit the instruction. *See* Appendix. The Maryland statutes of 1984 place this State in the category of those jurisdictions which mandate commitment.

As we have noted, *supra,* the Court of Special Appeals was "not persuaded to depart from [its] own holdings in *Brown* [*v. State,* 8 Md.App. 462, 260 A.2d 665] and *Tripp* [*v. State,* 36 Md.App. 459, 374 A.2d 384]" even though both

were decided before the laws of 1984 were enacted. *Erdman*, 75 Md.App. at 576, 542 A.2d 399. It found that *Brown* and *Tripp* were "consistent with the majority view around the country...." But it did not analyze the cases in the frame of reference of status of the commitment laws in the jurisdiction in which the cases were decided. The intermediate court recognized both the substantive and procedural changes in the criminal responsible ("insanity") law made in 1984, but saw "no compelling reason to embark on a new course." *Erdman*, 75 Md.App. at 576, 544 A.2d 399. We think that, in the light of the 1984 statutes, there is compelling reason to embark on a new course.

The Court of Special Appeals pointed out in *Erdman* that the American Bar Association has recommended the giving of an instruction on the consequences of a verdict of nonresponsibility. The court referred to Standard 7–6.8 of the Criminal Justice Mental Health Standards and quoted, at 574, the provision that

[t]he court should instruct the jury as to the dispositional consequences of a verdict of not guilty by reason of mental nonresponsibility [insanity].

The intermediate court looked to the Commentary to the Standard, which set out the reasons espoused on both sides of the issue, and then further quoted the conclusion of the ABA (omitting the footnote):

Both stances are based on assumptions about jury knowledge and the effects of instructions. Given the absence of solid empirical data supporting either view, common sense and policy considerations must provide guidance. Providing for an instruction seems the most sensible approach given the potential for prejudice to defendants when the alternative course is followed. Particularly in cases in which defendants are charged with violent crimes (which is usually the case if the nonresponsibility issue is tried to a jury, as opposed to a judge), juries need to be told about the effect of a finding of mental nonresponsibility [insanity] if the possibility of a

serious injustice is to be avoided. The fear of compromise verdicts is misplaced.

75 Md.App. at 574–575, 544 A.2d 399.

The case most cited and quoted in the cases dealing with the issue before us is *Lyles v. United States*, 254 F.2d 725 (D.C.Cir.1957), *cert. denied*, 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067 (1958). The issue was before the court in this form:

> In cases where the defense of insanity is asserted what, if anything, should the court instruct the jury about the consequences of a verdict of not guilty by reason of insanity, pursuant to D.C.Code § 24–301 [providing for the disposition of the defendant].

*Id.* at 727–728. A majority of the court held that such an instruction shall be given unless it affirmatively appears on the record that the defendant did not want it given. *Id.* at 728–729. The majority explained:

> This point arises under the doctrine, well established and sound, that the jury has no concern with the consequences of a verdict, either in the sentence, if any, or the nature or extent of it, or in probation. But we think that doctrine does not apply in the problem before us. The issue of insanity having been fairly raised, the jury may return one of three verdicts, guilty, not guilty, or not guilty by reason of insanity. Jurors, in common with people in general, are aware of the meanings of verdicts of guilty and not guilty. It is common knowledge that a verdict of not guilty means that the prisoner goes free and that a verdict of guilty means that he is subject to such punishment as the court may impose. But a verdict of not guilty by reason of insanity has no such commonly understood meaning. As a matter of fact its meaning was not made clear in this jurisdiction until Congress enacted the statute of August 9, 1955. It means neither freedom nor punishment. It means the accused will be confined in a hospital for the mentally ill until the superintendent of such hospital certifies, and the court is satisfied, that such person has recovered his sanity and

will not in the reasonable future be dangerous to himself or others. We think the jury has a right to know the meaning of this possible verdict as accurately as it knows by common knowledge the meaning of the other two possible verdicts.

*Id.* (footnote omitted). This is in accord with the ABA. The Court of Special Appeals was not persuaded by this reasoning. It was "unwilling to assume that the public is ignorant in this matter or that they harbor the belief that dangerous persons will be released without restraint upon a finding of non-responsibility." *Erdman,* 75 Md.App. at 577, 544 A.2d 399. It opined that juror ignorance in the matter "may not be so deep as *Lyles* and the ABA imagine." *Id.* at 576, 544 A.2d 399. Maybe so. But we are uncomfortable with the possibility that the verdict will be tainted to the prejudice of the defendant by what the jury *has been told* about the defendant's responsibility, without information as to his disposition as prescribed by law.

The trial judge here correctly informed the jury concerning the plea of not criminally responsible. He said:

If ... you are convinced beyond a reasonable doubt that the defendant committed the particular crime, then you should determine whether the defendant was criminally responsible at the time of the commission of the crime.

He set out the test for criminal responsibility. Near the end of the instructions, the court told the jury:

It is ... your responsibility and duty with regard to those offenses which you have determined the defendant to be guilty, to make a determination by a preponderance of the evidence as to his not being criminally responsible.

If you are persuaded by a preponderance of the evidence that he is not criminally responsible, it is your duty to enter such a finding. If you are not persuaded by preponderance of the evidence, it is equally your duty to determine or enter a decision that he was criminally responsible.

The verdict sheet given to the jury to complete contained spaces for the jury to designate "Criminally Responsible" or "Not Criminally Responsible."

The word "responsible" stood naked before the jury. The jury received no indication whatsoever by way of court proceedings as to what happens to a defendant found to be not criminally responsible for his criminal conduct. The curtain was drawn on that matter and no light seeped through officially. All the jury had before it was the test for its determination whether the defendant was "responsible" or not. There was no suggestion as to what effect a finding of not criminally responsible would have. The common meaning of "responsible" is "likely to be called upon to answer (a man is [responsible] for his acts)." *Webster's Third New International Dictionary of the English Language Unabridged.* Or as *Webster* also defines it, "chargeable with the result." It follows that if one is not responsible he is not likely to be called upon to answer for his acts or chargeable with their result. This leads to a reasonable connotation that a defendant found to be not responsible for his criminal conduct will walk out of the courtroom, not only unpunished but free of any restraint.

In any event, we do not know the extent of the knowledge of the average juror with respect to the Maryland law providing for the disposition of a defendant found to be not responsible for the crimes he committed. We are not as willing as was the Court of Special Appeals to assume that juror ignorance on the matter is not so deep as *Lyles* and the ABA imagine. *See Erdman*, 75 Md.App. at 576–577, 544 A.2d 399. If assumptions are to be made in the absence of empirical data, we think that justice is better served by assuming that the jurors are not sufficiently aware of the dispositional provisions. We lean toward the observation of the ABA that

> despite instructions cautioning them to consider only the evidence they have heard, jurors who are not informed about dispositional consequences will speculate about the

practical results of a nonresponsibility verdict and, in ignorance of reality, will convict persons who are not criminally responsible in order to protect society. Jurors surely know, without being told, what happens to most convicted offenders, as well as defendants who are acquitted outright; the proposed instruction provides the same level of knowledge with respect to the fate of persons acquitted by reason of mental nonresponsibility [insanity].

Commentary to Standard 7–6.8, at 7–345, Criminal Justice Mental Health Standards. We are guided, as was the ABA, by common sense and policy considerations rather than by a doctrine outmoded by our present law. We agree with the ABA Comment that "[p]roviding for an instruction seems the most sensible approach given the potential for prejudice to defendants when the alternative course is followed." We are in general accord with the ABA view that "juries need to be told about the effect of a finding of mental nonresponsibility [insanity] if the possibility of a serious injustice is to be avoided." We think, as did the majority in *Lyles*, that

the jury has the right to know the meaning of [a verdict of not criminally responsible] as accurately as it knows by common knowledge the meaning of [a verdict of guilty and a verdict of not guilty].

*Lyles*, 254 F.2d at 728. As we have seen, the dispositional provisions of our law upon the return of a verdict of not criminally responsible have been in effect since 1984. We see no sound reason to preclude such an instruction. On the contrary, the interests of justice, fundamental fairness, common sense, and the weight of authority in those jurisdictions which mandate commitment, support that a dispositional instruction be permitted.

The view that a jury has the need and right to know the consequences of a verdict of not criminally responsible is bottomed on possible prejudice to the defendant. Therefore, we think that the instruction is to be given only when duly requested by the defendant. It may well be that for strategic or tactical reasons or the nature of the evidence,

the defendant will not want the instruction. The option is his.

We do not prescribe a form of instruction. We have expressed, *supra,* our agreement with the Court of Special Appeals determination that "[i]n the circumstances of this case," the proposed instruction was sufficient. We suggest, however, as did the majority in *Lyles,* 254 F.2d at 728, that "a recitation of the statutory procedure in great detail, such as reading the entire section of the statute, would tend to increase confusion." [2]

We hold that the trial judge erred in refusing to give the instruction requested by the defendant at the close of the evidence. It follows that the affirmance of the judgments by the Court of Special Appeals was erroneous. Erdman is entitled to a new trial.

Because of our holding, we do not reach the question of the propriety of the refusal of the trial court to grant the instruction when it was again requested by the defendant to cure certain comments made by the prosecutor in his arguments to the jury. *See Erdman,* 75 Md.App. at 577–578, 544 A.2d 399.

IV

We need not consider the court's refusal to allow defense counsel to make the final argument to the jury on the issue of criminal responsibility. At the end of the State's case in chief, defense counsel asked for the opportunity to address the jury last on the matter of criminal responsibility. The request was denied. We had the issue before us in *Treece v. State,* 313 Md. 665, 547 A.2d 1054, but there also had no need to consider it. *Id.* at 683, 547 A.2d 1054. We ob-

---

**2.** We note that the instruction recommended by the Maryland Criminal Pattern Jury Instructions prepared by the Maryland State Bar Association, Inc., Committee on Criminal Pattern Jury Instructions (1987), to be used when an issue of insanity is generated by the evidence, is silent as to the consequences of a verdict of not criminally responsible. MPJI–Cr 5:05.

served that "the question of the order of argument on the issue of criminal responsibility is not free from difficulty." *Id.* at 684, 547 A.2d 1054. We pointed out some of the troublesome problems, *id.* at 684–685, 547 A.2d 1054, and concluded that the

> major changes in the law, shifting the burden of proof on the issue of criminal responsibility and increasing the chances of lengthy indefinite confinement for a defendant found not criminally responsible, emphasize the desirability of a bifurcated proceeding in appropriate circumstances.

*Id.* at 686–687, 547 A.2d 1054. We stated that "we shall refer the bifurcation issue to our Standing Committee on Rules of Practice and Procedure for a prompt report." *Id.* at 687, 547 A.2d 1054. We did so. We anticipate that the order of argument in a unitary trial and in a bifurcated trial will soon be resolved by rule.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED;

CASE REMANDED TO THAT COURT WITH DIRECTION TO REVERSE THE JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND REMAND THE CASE TO THAT COURT FOR A NEW TRIAL;

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY BALTIMORE COUNTY, MARYLAND.

### APPENDIX

Jurisdictions which by statute mandate the confinement of a defendant found to be not criminally responsible for criminal conduct (insane) and require or permit, by judicial decision or statute, instructions on the consequences of such verdict.

| State | Statute Concerning Confinement | Case or Statute Concerning Instructions |
|---|---|---|
| Alaska | Alaska Sta. § 12.47.050 and § 12.47.090(b) (1984) | Schade v. State, 512 P.2d 907 (Alaska 1973) |

APPENDIX—Continued

| State | Statute Concerning Confinement | Case or Statute Concerning Instructions |
|---|---|---|
| California | Cal. Penal Code § 1026 (West 1988 Supp.) | People v. Young, 189 Cal. App.3d 891, 234 Cal.Rptr. 819 (1987) |
| Colorado | Colo. Rev. Stat. § 16–8–105(4) (1986) | People v. Thomson, 197 Colo. 232, 591 P.2d 1031 (1979) |
| District of Columbia | D.C. Code Ann. § 24–301 (1981) | Adams v. United States, 502 A.2d 1011 (D.C. App. 1986) |
| Kansas | Kan. Stat. Ann. § 22–3428 (1987 Cum. Supp.) | Kan. Stat. Ann. § 22–3428(6) (1987 Cum. Supp.) |
| Missouri | Mo. Rev. Stat. § 552.040 (1987) | Mo. Stat. Ann. § 552.030(6) (Vernon 1987) |
| North Carolina | N.C. Gen. Stat. § 15A–1321 (1988) (mandatory if violent crime) | State v. Allen, 322 N.C. 176, 367 S.E.2d 626 (1988) |
| Wisconsin | Wis. Stat. Ann. § 971.17 (1985) | Wis. Stat. Ann. § 971.165(2) (1988 Supp.) |

Jurisdictions which by statute mandate the confinement of a defendant found not to be responsible for criminal conduct (insane), but preclude, by judicial decision, instructions on the consequences of such verdict.

| State | Statute Mandating Confinement | Case Concerning Instructions |
|---|---|---|
| Maine | Me. Rev. Stat. Ann. title 15, § 103 (1980) | State v. Condon, 468 A.2d 1348 (Me. 1983), cert. denied, 467 U.S. 1204, 104 S. Ct. 2385, 81 L.Ed.2d 344 (1984) |
| Wyoming | Wyo. Stat. § 7–11–306 (1987) | Lonquest v. State, 495 P.2d 575 (Wyo.), cert. denied, 409 U.S. 1006, 93 S. Ct. 432, 34 L.Ed.2d 299 (1972) |