Ronald L. CORDOVA, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 90SC342.

Supreme Court of Colorado,
En Banc.

Sept. 16, 1991.

David A. Lane, Denver, for petitioner.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Hope P. McGowan and John J. Krause, Asst. Attys. Gen., Denver, for respondent.

Justice QUINN delivered the Opinion of the Court.

The question in this case is whether a trial court errs by refusing a defendant's request for an informational instruction that advises the jury of the consequences of a not guilty verdict by reason of the affirmative defense of impaired mental condition. The court of appeals in an unpublished opinion affirmed the trial court's refusal to give such an instruction. *People v. Cordova*, No. 87CA1686 (Court of Appeals, April 5, 1990). In so ruling, the court conceded the need for such an instruction at a separate sanity trial in order

to guard against the risk of the jury's erroneous belief that a verdict of not guilty by reason of insanity would result in the defendant's immediate release to the community, but then reasoned that those same concerns are not present during a trial on the merits at which the affirmative defense of impaired mental condition has been placed in issue. Because we find the court of appeals' distinction untenable, we reverse the judgment and remand the case to that court with directions to return the case to the district court for a new trial.

## I.

The defendant, Ronald L. Cordova, was charged with one count of first degree murder after deliberation,[1] one count of first degree assault by means of a deadly weapon,[2] two counts of second degree assault by means of a deadly weapon,[3] and one count of committing a crime of violence.[4] The charges arose out of a shooting incident at a Denver bar on May 9, 1986, in which the defendant shot and killed his common law wife, Carol D. Jenkins, and also shot and seriously injured the bartender and wounded two bar patrons.

After the charges were filed, the defendant entered a plea of not guilty by reason of insanity.[5] The trial court ordered the defendant examined at the Colorado State Hospital on the issue of sanity—that is, whether the defendant was so diseased or defective of mind at the time of the commission of the acts charged against him as to be incapable of distinguishing right from wrong with respect to those acts. § 16–8–101(1), 8A C.R.S. (1986). A staff psychiatrist at the state hospital filed a report in which he expressed the opinion that the defendant was suffering from a "significant depressive disorder, alcohol abuse disorder, personality disorder, and organic brain syndrome" but was legally sane. The defendant was later tried to a jury on the issue of sanity, and the jury found the defendant legally sane.

Subsequent to the sanity trial, and prior to the trial on the merits, the trial court permitted the defendant to enter a plea of not guilty by reason of impaired mental condition—that is, that the defendant suffered from a mental disease or defect which, although not constituting legal insanity, nevertheless prevented him from forming the requisite culpable mental state for the crimes charged against him. § 16–8–102(2.7), 8A C.R.S. (1986). The court ordered an examination of the defendant at the state hospital. A staff psychiatrist of the hospital filed a report in which he concluded that the defendant suffered from an atypical personality disorder and tension headaches but was capable of forming the requisite culpable mental state for the offenses charged against him.

A jury trial on the merits took place in July 1987. The defendant raised the issue of impaired mental condition by presenting testimony from lay witnesses.[6] The evidence showed that the defendant and Carol Jenkins experienced a stormy relationship for approximately ten years. A few months prior to the shooting incident Jenkins left the defendant and later filed for a dissolution of their marriage. After the dissolution action was filed, the defendant's

1. § 18–3–102(1)(a), 8B C.R.S. (1986).

2. § 18–3–202(1)(a), 8B C.R.S. (1986).

3. § 18–3–203(1)(b), 8B C.R.S. (1986).

4. § 16–11–309, 8A C.R.S. (1986).

5. The trial court also ordered a competency examination of the defendant. § 16–8–110(2), 8A C.R.S. (1986). A defendant is incompetent to proceed when he is "suffering from a mental disease or defect which renders him incapable of understanding the nature and course of the proceedings against him or of participating or assisting in his defense or cooperating with his defense counsel." § 16–8–102(3), 8A C.R.S. (1986). The court-appointed psychiatrist was of the opinion that the defendant suffered from an atypical personality disorder and major depression but was competent to proceed.

6. Section 16–8–109, 8A C.R.S. (1986), authorizes witnesses to testify to their observations of the defendant's actions and conduct, and conversations with him, bearing on the defendant's mental condition and to give their opinions on the defendant's mental condition. *See People v. Medina*, 185 Colo. 101, 105, 521 P.2d 1257, 1259 (1974).

emotional instability became more pronounced. The defendant's mother testified to a long history of mental problems experienced by the defendant and to his inordinate state of confusion and bizarre behavior for some time prior to the shooting of his wife and others at the bar on May 9, 1986. This testimony, to some extent, was corroborated by the testimony of the defendant's brother and sister, as well as a neighbor, who described the defendant's obvious anxiety and strange behavior during this same period of time. The prosecution, in rebuttal, elicited testimony from the Colorado State Hospital psychiatrists who previously examined the defendant and who offered the opinion that the defendant was capable of forming the requisite culpable mental state for the crimes charged against him.[7]

At the conclusion of the evidence, the trial court conferred with the prosecuting attorney and defense counsel in order to settle jury instructions and, in particular, to resolve whether the jury should be instructed on the consequences of a verdict of not guilty by reason of impaired mental condition. Defense counsel requested the court to give such an instruction. The trial court ruled that it would instruct the jury on the affirmative defense of impaired mental condition but that it would not give an instruction informing the jury of the consequences of a verdict of not guilty by reason of impaired mental condition.[8] The jury was given the statutory definition of impaired mental condition, § 16–8–102(2.7), 8A C.R.S. (1986), and was further instructed that the evidence in the case had raised

the affirmative defense of impaired mental condition and that the prosecution had "the burden of proving the guilt of the defendant to your satisfaction beyond a reasonable doubt as to the affirmative defense, as well as to all the elements of the crime[s] charged." The jury found the defendant guilty as charged, and the court sentenced him to life imprisonment for first degree murder and imposed consecutive sentences totalling 54 years on the assault and crime of violence charges.

In affirming the judgment, the court of appeals acknowledged that this court's decision in *People v. Thomson*, 197 Colo. 232, 591 P.2d 1031 (1979), required a trial court to instruct the jury, at the defendant's request, on the consequences of an insanity verdict, but then offered the following rationale for distinguishing the *Thomson* decision from a trial on the affirmative defense of impaired mental condition:

> Impaired mental condition ... is an affirmative defense addressed at the trial on the merits. The jury at the trial on the merits must determine only whether the prosecution proved all of the elements of the substantive charge, including any issue raised as an affirmative defense, beyond a reasonable doubt. *See* § 18–1–407(2), C.R.S. (1986 Repl.Vol. 8B). Thus, the concerns addressed in *Thomson* do not arise during the trial on the merits.
>
> In addition, if the consequences of one affirmative defense must be revealed to the jury, fairness would require that they be informed of the consequences of all

7. The prosecution also elicited testimony from a neurologist who began treating the defendant in 1982 for chronic headache and fever and prescribed an anti-depressant medication as well as an additional medication for pain, which proved unsuccessful. The neurologist testified that when he examined the defendant three months prior to the shooting incident, the defendant was experiencing severe headaches and was having difficulty at home with Carol Jenkins and with his co-workers on the job. At that time, the neurologist prescribed a different medication for the defendant. The prosecution also presented testimony from a psychiatrist who testified that he examined the defendant in May 1986 at a Denver Mental Health Center. It was his testimony that the defendant exhibited clas-

sic signs of depression at this time for which he prescribed an anti-depressant medication which could induce mood changes, but he doubted that the medication had the effect of causing the defendant to experience hallucinations.

8. The trial court was of the view that because the statutory scheme for resolving the defense of impaired mental condition required the jury to determine the general issue of guilt or non-guilt, and because only upon a not guilty verdict was the jury then required to determine whether the not guilty verdict was by reason of impaired mental condition, the statutory scheme did not contemplate the informational instruction requested by the defendant.

affirmative defenses raised in a case. Such a requirement would unduly expand the instructions submitted to the jury and further complicate the deliberative process, blurring the jury's role as the finder of fact.

*Cordova*, No. 87CA1686, slip op. at 4–5. We thereafter granted the defendant's petition to consider whether the court of appeals correctly affirmed the trial court's refusal to give the informational instruction requested by the defendant.

## II.

Because the court of appeals placed preeminent importance on the distinction between the insanity defense and the affirmative defense of impaired mental condition, a proper assessment of the court of appeals' decision must begin with a review of the respective statutory schemes for adjudicating these defenses.

## A.

Under the Colorado Criminal Code, which was enacted in 1971 and became effective on July 1, 1972, ch. 121, secs. 1–5, 1971 Colo.Sess.Laws 388–490, insanity is an affirmative defense to conduct proscribed as criminal. § 18–1–802, 8B C.R.S. (1986). "[A]n insane person is absolved of [criminal] responsibility for all crimes, including those that do not require proof of a *mens rea* element." *People v. Low*, 732 P.2d 622, 629–30 (Colo.1987); *see generally People v. Chavez*, 629 P.2d 1040, 1046–48 (Colo.1981). Although a person is initially presumed sane, once some credible evidence of insanity is presented the prosecution must prove the defendant's sanity beyond a reasonable doubt. *See* § 18–1–407, 8B C.R.S. (1986); *People v. Kernanen*, 178 Colo. 234, 239–40, 497 P.2d 8, 11–12 (1972); *see generally People ex rel Juhan v. District Court*, 165 Colo. 253, 439 P.2d 741 (1968).

The definition of legal insanity and the procedures applicable to an insanity plea are contained in the Colorado Code of Criminal Procedure, which was enacted in 1972 and also became effective on July 1, 1972. Ch. 44, secs. 1–10, 1972 Colo. Sess. Laws 190–268. A person is legally insane if he is "so diseased or defective in mind at the time of the commission of the act as to be incapable of distinguishing right from wrong with respect to that act." § 16–8–101(1), 8A C.R.S. (1986). The insanity defense must be raised by specific plea at the time of arraignment. § 16–8–103(1), 8A C.R.S. (1986). When an insanity plea is entered, the court is required to commit the defendant for a sanity examination. §§ 16–8–105(1) & 16–8–106(1), 8A C.R.S. (1986). Unless the prosecution and the defendant consent to a waiver of a jury trial, § 16–10–101, 8A C.R.S. (1990 Supp.), the issues raised by an insanity plea must be tried to a separate jury prior to the trial of the issues raised by a not guilty plea. § 16–8–104, 8A C.R.S. (1986).

If the trier of fact finds that the defendant was sane at the time of an alleged crime, the case then must be set for trial on the defendant's not guilty plea. § 16–8–105(3), 8A C.R.S. (1986). Where, however, the defendant is found to be insane, the court is required to "commit the defendant to the custody of the department of institutions until such time as he is found eligible for release." § 16–8–105(4), 8A C.R.S. (1986). Upon commitment, the executive director of the department of institutions must designate the facility at which the defendant shall be held for "care and psychiatric treatment" and is permitted to transfer the defendant from one institution to another in the interest of "proper care, custody, and treatment" or "the protection of the public or the personnel of the facilities in question." *Id.* A defendant committed as a result of an insanity adjudication is not eligible for release or conditional release from the commitment unless and until the court is satisfied by a preponderance of the evidence that "the defendant has no abnormal mental condition which would be likely to cause him to be dangerous either to himself or others or to the community in the reasonably foreseeable future, and is capable of distinguishing right from wrong and has substantial capacity to conform his conduct to require-

ments of law." § 16–8–120(3), 8A C.R.S. (1986).

### B.

Impaired mental condition also is an affirmative defense to criminal conduct. §§ 18–1–803 & 18–1–805, 8B C.R.S. (1986). As originally enacted in 1971, the Colorado Criminal Code provided that "[e]vidence of an impaired mental condition though not legal insanity may be offered in a proper case as bearing upon the capacity of the accused to form the specific intent if such an intent is an element of the offense charged." Ch. 121, sec. 1, 1971 Colo. Sess. Laws, § 40–1–903, 388, 412. In *Hendershott v. People*, 653 P.2d 385 (Colo.1982), *cert. denied*, 459 U.S. 1225, 103 S.Ct. 1232, 75 L.Ed.2d 466 (1983), we reversed a trial court ruling that construed this statutory defense to prohibit an accused from offering mental impairment evidence to contest the culpability element for a nonspecific-intent crime. In so holding we stated:

> Once we accept the basic principles that an accused is presumed innocent and that he cannot be adjudicated guilty unless the prosecution proves beyond a reasonable doubt the existence of the mental state required for the crime charged, it defies both logic and fundamental fairness to prohibit a defendant from presenting reliable and relevant evidence that, due to a mental impairment beyond his conscious control, he lacked the capacity to entertain the very culpability which is indispensable to his criminal responsibility in the first instance. We therefore disapprove the trial court's ruling as violative of due process of law and hold that reliable and relevant mental impairment evidence is admissible, upon proper foundation, to negate the culpability element of the criminal charge.

653 P.2d at 393–94 (footnote omitted).

It was after our decision in *Hendershott* that the General Assembly enacted the presently existing statutory scheme for resolving the affirmative defense of impaired mental condition. *See Low*, 732 P.2d at 632. The purpose of this statutory scheme is to provide an accused with the means to contest guilt due to an inability to form the mental culpability element of a crime as a result of a mental illness, *see Low*, 732 P.2d at 631, and at the same time to protect the public against any danger posed by the immediate release of an accused acquitted of a criminal charge by reason of an impaired mental condition.

Impaired mental condition is defined in section 16–8–102(2.7), 8A C.R.S. (1986), as follows:

> "Impaired mental condition" means a condition of mind, caused by mental disease or defect, which does not constitute insanity but, nevertheless, prevents the person from forming a culpable mental state which is an essential element of a crime charged. For the purposes of this subsection (2.7), "mental disease or defect" includes only those severely abnormal mental conditions which grossly and demonstrably impair a person's perception or understanding of reality and which are not attributable to the voluntary ingestion of alcohol or any other psychoactive substance; except that it does not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct.

As in the case of an insanity plea, the defense of impaired mental condition must be raised by special plea at the time of arraignment unless the court, for good cause shown, permits the defendant to raise the defense at a later time prior to trial. § 16–8–103.5(1), 8A C.R.S. (1986). Upon entry of the plea, the court must order a mental examination of the defendant similar to the examination required upon the entry of an insanity plea. § 16–8–103.5(4), 8A C.R.S. (1986). Because impaired mental condition is an affirmative defense under the Colorado Criminal Code, the prosecution bears the burden of establishing the defendant's guilt beyond a reasonable doubt as to the affirmative defense whenever some credible evidence raises the issue of the defendant's impaired mental condition. § 18–1–407, 8B C.R.S. (1986).

The statutory scheme requires that the affirmative defense of impaired mental con-

dition be determined at the trial on the merits under the following procedures:

When the affirmative defense of impaired mental condition has been raised, the jury will be given special verdict forms containing interrogatories. The trier of fact shall decide first the question of guilt as to felony charges which are before the court. If the trier of fact concludes that guilt has been proven beyond a reasonable doubt as to one or more of the felony charges submitted for consideration, the special interrogatories shall not be answered. Upon completion of its deliberations on the felony charges as previously set forth in this subsection (3), the trier of fact shall consider any other charges before the court in a similar manner; except that it shall not answer the special interrogatories regarding such charges if it has previously found guilt beyond a reasonable doubt with respect to one or more felony charges. The interrogatories shall provide for specific findings of the jury with respect to the affirmative defense of impaired mental condition in accordance with the Colorado rules of criminal procedure. When the court sits as the trier of fact, it shall enter appropriate specific findings with respect to the affirmative defense of impaired mental condition. If the trier of fact finds that the defendant is not guilty by reason of the affirmative defense of impaired mental condition, the court shall commit the defendant to the department of institutions pursuant to section 16–8–103.5(5), C.R.S.

§ 18–1–803(3), 8B C.R.S. (1986). The dispositional effects of a not guilty verdict by reason of impaired mental condition are identical to those of an insanity adjudication. Section 16–8–103.5(5), 8A C.R.S. (1986), requires the court to commit the defendant "to the custody of the department of institutions until such time as he is found eligible for release, pursuant to the standards set forth in sections 16–8–115 and 16–8–120." Section 16–8–115, 8A C.R.S. (1986), outlines identical procedures for the release of an accused committed after a verdict of either not guilty by reason of insanity or not guilty by reason of

impaired mental condition. Section 16–8–120(4), 8A C.R.S. (1986), states that the applicable test for a defendant's eligibility for release or conditional release from a commitment by reason of impaired mental condition shall be the following: "That the defendant has no abnormal mental condition which would be likely to cause him to be dangerous either to himself or to others or to the community in the reasonably foreseeable future." As in the case of an insanity commitment, the court must be convinced by a preponderance of the evidence that the defendant "is eligible for release by no longer having an impaired mental condition." § 16–8–115(2), 8A C.R.S. (1986).

### III.

The defendant argues that the very same concerns which militate in favor of an informational instruction on the consequences of a jury verdict of not guilty by reason of insanity are equally applicable to a trial on the merits involving the issue raised by a plea of not guilty by reason of impaired mental condition. The People, on the other hand, contend that the giving of the informational instruction would lead to jury confusion by injecting a matter extraneous to the issue of guilt and, in any event, the trial court's failure to give the instruction in this case was harmless error. We are satisfied that the same reasons that prompted us in *People v. Thomson*, 197 Colo. 232, 591 P.2d 1031 (1979), to approve a trial court's informational instruction in a sanity trial on commitment procedures following an insanity verdict are equally applicable to a defendant's request for a similar informational instruction at a jury trial on the issue raised by the affirmative defense of impaired mental condition.

### A.

In *Thomson*, the trial court, over the prosecution's objection, instructed the jury in a sanity trial that upon a finding of not guilty by reason of insanity the defendant would be committed to the department of institutions until it was determined that he "no longer require[d] hospitalization be-

cause he no longer suffers from a mental disease or defect which is likely to cause him to be dangerous to himself, to others, or to the community in the reasonably foreseeable future." 197 Colo. at 233, 591 P.2d at 1031. In affirming the judgment, we acknowledged that we previously had upheld a trial court's refusal to give such an instruction in *Ingles v. People*, 90 Colo. 51, 57, 6 P.2d 455, 457–58 (1931), but then drew upon the reasoning of *Lyles v. United States*, 254 F.2d 725 (D.C.Cir.1957), and expressly overruled *Ingles*. In *Lyles*, the court approved an informational instruction on the consequences of a verdict of not guilty by reason of insanity, reasoning as follows:

> Jurors, in common with people in general, are aware of the meanings of verdicts of guilty and not guilty. It is common knowledge that a verdict of not guilty means that the prisoner goes free and that a verdict of guilty means that he is subject to such punishment as the court may impose. But a verdict of not guilty by reason of insanity has no such commonly understood meaning. As a matter of fact its meaning was not made clear in this jurisdiction until Congress enacted the statute of August 9, 1955. It means neither freedom nor punishment. It means the accused will be confined in a hospital for the mentally ill until the superintendent of such hospital certifies, and the court is satisfied, that such person has recovered his sanity and will not in the reasonable future be dangerous to himself or others. We think the jury has a right to know the meaning of this possible verdict as accurately as it knows

by common knowledge the meaning of the other two possible verdicts.

254 F.2d at 728 (footnote omitted). Finding the *Lyles* reasoning persuasive, we remarked in *Thomson:*

> We realize that the challenged instruction in this case might possibly influence the jury toward a result-oriented verdict. This must be balanced by the possible miscarriage of justice if, in the mistaken belief that as a result of an insanity verdict the accused will be returned to the community, the jury rejects such a verdict on that account and later finds the accused guilty. This possibility should be negated by a jury instruction which clearly and simply explains the consequences to the defendant of an insanity verdict. Such an instruction should clearly indicate that it is only informational and is to have no persuasive bearing on the jury's determination of a proper verdict under the evidence.
>
> Premised on the foregoing discussion, we now adopt the rule that a defendant who is relying on an insanity defense is entitled, *upon request*, to an instruction on commitment procedures.

197 Colo. at 233–34, 591 P.2d at 1032 (emphasis in original, footnote and citations omitted); *see also State v. Shickles*, 760 P.2d 291 (Utah 1988); *Erdman v. State*, 315 Md. 46, 553 A.2d 244 (1989); *ABA Criminal Justice Mental Health Standards*, § 7–6.8 (1989).[9]

██ Although the affirmative defenses of insanity and impaired mental condition are separate and distinct, *see Low*, 732 P.2d at 632, they both relate to the issue of criminal responsibility under the Colorado

---

**9.** Criminal Justice Mental Health Standard 7–6.8 states:

"The court should instruct the jury as to the dispositional consequences of a verdict of not guilty by reason of mental nonresponsibility [insanity]" (brackets in original). The commentary to this standard notes that a principal argument against informing juries about the dispositional consequences of an insanity verdict is that it may distort the decision-making process, but then continues:

The position taken in the standard reflects a contrary view that, despite instructions cautioning them to consider only the evidence they have heard, jurors who are not informed

about dispositional consequences will speculate about the practical results of a nonresponsibility verdict and, in ignorance of reality, will convict persons who are not criminally responsible in order to protect society. Jurors surely know, without being told, what happens to most convicted offenders, as well as defendants who are acquitted outright; the proposed instruction provides the same level of knowledge with respect to the fate of persons acquitted by reason of mental nonresponsibility [insanity].

ABA Criminal Justice Mental Health Standard 7–6.8, comment at 381 (1989).

Criminal Code, *see* § 18–1–805, 8A C.R.S. (1986), and a not guilty verdict by reason of either insanity or impaired mental condition results in the same dispositional consequences for the accused. The fact that the defense of impaired mental condition is resolved in the trial on the defendant's not guilty plea, rather than in a separate trial as in the case of the insanity plea, provides no justification for refusing a defendant's request for an informational instruction on the consequences of a verdict of not guilty by reason of impaired mental condition. What is significant, in our view, is that the same risk of a possible miscarriage of justice in a sanity trial due to the jury's mistaken belief that an insanity verdict will result in the accused's immediate release to the community is equally present in a trial involving the affirmative defense of impaired mental condition. Indeed, in light of the common belief that a not guilty verdict generally means that the defendant goes free, *see Lyles*, 254 F.2d at 728, *Thomson*, 197 Colo. at 233, 591 P.2d at 1032, the need to inform the jury of the consequences of a not guilty verdict by reason of impaired mental condition is at least as equally compelling as the need for the informational instruction in an insanity trial.

Moreover, we cannot agree with the court of appeals' observation that if the jury is to be instructed on the consequences of a verdict of not guilty by reason of impaired mental condition, the jury should be similarly instructed concerning the consequences of a not guilty verdict based on all other affirmative defenses. The short answer to that reasoning is that a not guilty verdict based on affirmative defenses other than insanity and impaired mental condition results in the defendant's immediate release from the charges filed against him and thus would be consistent with the commonly held belief concerning the consequences of a not guilty verdict. There simply would be no need under such circumstances to instruct the jury on what the jury obviously already knows. This same observation, however, cannot be made in regard to the jury's understanding of the consequences of a not guilty verdict by reason of impaired mental condition.

In the instant case, the jury was given general guilty and not guilty verdicts on the various charges. Although the trial court instructed the jury that the evidence at trial raised the affirmative defense of impaired mental condition, the instructions did nothing to dispel the risk that the jury might deliberate the ultimate issue of guilt or non-guilt on the basis of a mistaken belief that a not guilty verdict by reason of impaired mental condition would result in the defendant's release on the charges and his immediate return to the community. Under these circumstances, we are convinced and accordingly hold that the trial court's refusal to give the defendant's requested informational instruction constituted error.

### B.

In urging a contrary result, the People argue that the informational instruction would create an unacceptable risk of jury confusion by injecting an extraneous matter into the deliberative process. We find this argument devoid of merit.

The informational instruction requested by the defendant in this case, no less than the informational instruction approved by this court in *Thomson*, was calculated to perform the specific function of avoiding a possible miscarriage of justice by disabusing jurors of a mistaken belief concerning the consequences of a not guilty verdict by reason of impaired mental condition. We do not accept the notion, implicit in the People's argument, that an instruction specifically calculated to inform the jury of the dispositional effects of such a verdict will somehow impair the deliberative process, rather than assist the jury in arriving at a fair and impartial verdict.

### C.

We likewise find no merit in the prosecution's argument that any error in the trial court's refusal to give the defendant's requested instruction was harmless. A ruling on a jury instruction may be considered harmless as long as the ruling did not affect a substantial right of the party

against whom the ruling is made. *See* C.A.R. 35(e) (appellate court shall disregard any error not affecting substantial right of party); Crim.P. 52 (any error not affecting substantial rights shall be disregarded). The appropriate inquiry in determining a harmless error issue, therefore, is whether it can be said with fair assurance that, in light of the entire trial record, the error did not substantially influence the verdict or impair the fairness of the trial. *E.g., King v. People*, 785 P.2d 596, 605 (Colo.1990); *People v. Gaffney*, 769 P.2d 1081, 1088 (Colo.1989). If one is left in grave doubt over that issue, the conviction cannot stand. *People v. Carlson*, 712 P.2d 1018, 1023 (Colo.1986).

We are satisfied in this case that the trial court's refusal of the defendant's request for the informational instruction did affect the substantial right of the defendant to a fair trial on the affirmative defense of impaired mental condition. Although the defendant did not elicit expert testimony in support of the affirmative defense, he presented credible lay testimony, pursuant to section 16–8–109, 8A C.R.S. (1986), that clearly was sufficient to place the affirmative defense in issue and to require the prosecution to prove the defendant's guilt beyond a reasonable doubt as to the affirmative defense as well as all the elements of the crimes charged. In light of the manifest risk of a possible miscarriage of justice due to the jury's mistaken belief that a verdict of not guilty by reason of impaired mental condition might result in the defendant's return to the community—a risk which the defendant's requested instruction was calculated to negate—we cannot say with any degree of assurance that the fairness of the trial was not detrimentally affected by the trial court's erroneous ruling on the defendant's request for the informational instruction.

We accordingly reverse the judgment of the court of appeals and remand the case to that court with directions to return the case to the district court for a new trial.

Justice VOLLACK dissenting:

The majority holds that the trial court erred in refusing to give the jury an infor-mational instruction explaining the consequences of a verdict of not guilty by reason of impaired mental condition. I believe the majority's opinion is an unnecessary expansion of *People v. Thomson*, 197 Colo. 232, 591 P.2d 1031 (1979), in which we held that a jury could be given an informational instruction when confronted with the choice of a verdict of sane or not guilty by reason of insanity. Section 18–1–803(3), 8B C.R.S. (1986), on the affirmative defense of impaired mental condition, requires a jury to first determine if the defendant is guilty or not guilty of the charges. A *Thomson* informational instruction prior to a verdict on the charges should not in my opinion be required. Accordingly, I respectfully dissent.

The defendant was charged with one count of first degree murder, one count of first degree assault, two counts of second degree assault, and one count of committing a crime of violence. After the charges were filed, the defendant entered a plea of not guilty by reason of insanity. A separate trial was held to determine the issue of the defendant's sanity. The jury found the defendant legally sane.

The defendant then entered a plea of not guilty by reason of impaired mental condition. At the trial on the merits, the defendant raised the issue of his impaired mental condition through the testimony of his family and a neighbor. The prosecution rebutted this evidence with the testimony of three psychiatrists and a neurologist. At the conclusion of the evidence, the defendant requested that the jury be instructed, at the same time the court was to give instructions on the charges, on the consequences of finding the defendant not guilty by reason of impaired mental condition. The trial court denied this request and stated:

> The jury is to determine, first, whether a person is guilty or innocent, and in doing so they are to consider the impaired mental condition as a defense. If and only if they have determined that a person is not guilty, then is an interrogatory given to them as to whether or not the person

was found not guilty because of impaired mental condition.

The court of appeals affirmed the trial court's decision. We are asked to determine whether a defendant interposing a defense of impaired mental condition is entitled to an informational instruction explaining the consequences of a verdict of not guilty by reason of impaired mental condition.

## I.

The affirmative defense of impaired mental condition permits a defendant to contest the commission of a crime due to an alleged inability to formulate the requisite intent. *People v. Low*, 732 P.2d 622, 632 (Colo. 1987). Under section 18–1–803(1), a defendant may offer evidence of an impaired mental condition to negate "the culpable mental state which is an element of the offense charged." § 18–1–803(1), 8B C.R.S. (1986).[1]

The courts, however, are required to follow legislatively mandated procedures in submitting the defense of impaired mental condition to the jury. § 18–1–803(3).

First, the trier of fact must decide whether the defendant is guilty or not guilty of any felony charges. *Id.; see generally People v. Collins*, 752 P.2d 93, 98 (Colo.1988) (recognizing the procedure followed under section 18–1–803). Second, if, *and only if,* a defendant is found not guilty on all felony counts, the jury is required to answer special interrogatories indicating whether the defendant is not guilty by reason of impaired mental condition. § 18–1–803(3); *Collins*, 752 P.2d at 97–98. *See also* Sammons, *Legislative Update*, 12 Colo.Law. 1251, 1252 (1983). The special interrogatories are "to be considered only after the determination concerning guilt ha[s] been made as to each charge." *Collins*, 752 P.2d at 98.[2]

It is important to note that under section 18–1–803(3), the jury is first charged with determining whether the defendant is guilty or not guilty of the charges. If the defendant is found guilty as to one or more felony counts, the defendant is then subject to incarceration with the department of corrections. *Collins*, 752 P.2d at 97. A finding of guilt renders the special interrogatories irrelevant because the reasons that the

---

**1.** Unlike the court of appeals decision and the majority opinion, this dissent does not rely on the similarities or differences between the defenses of insanity and impaired mental condition. As this dissent indicates, such similarities and differences generally are not relevant to the decision in this case. It should be noted, however, that while the majority stresses the similarities between insanity and impaired mental condition in order to support their opinion, they only touched upon the fact that these two defenses are quite separate and distinct. Insanity is an affirmative defense that "is akin to the common-law plea of 'confession and avoidance,' and admits the commission of the offense but avoids or provides an excuse for criminal responsibility because the accused was insane at the time of the commission of the offense." *People v. Low*, 732 P.2d 622, 629 (Colo.1987).

The defense of impaired mental condition allows the defendant to introduce evidence of an impaired mental condition, § 18–1–803(1), which means a condition of mind, caused by mental disease or defect, which does not constitute insanity. § 16–8–102, 8A C.R.S. (1986). "The sole effect of the defense of impaired mental condition is to negate the existence of an element of the crime charged." *Low*, 732 P.2d at 631 (Colo.1987). "Thus, unlike the insanity defense, the successful assertion of impaired

mental condition negatives the commission of the crime." *Id.* at 632.

For example, in order for a defendant to be guilty of first degree murder, a defendant must be both sane *and* have acted willfully, deliberately and with premeditation. The insanity defense applies to the former and the impaired mental condition defense is an element of the latter. The majority's opinion elevates the defense of impaired mental condition to the level of the insanity defense.

**2.** Section 18–1–803(3) provides that "[i]f the trier of fact concludes that guilt has been proven beyond a reasonable doubt as to one or more of the felony charges submitted for consideration, the special interrogatories shall not be answered."

The possibility exists that the defense of impaired mental condition might result in a complete acquittal of the defendant if there is no lesser offense as to which the defendant possesses the requisite mental state. W. LaFave & A. Scott, *Criminal Law* § 4.7, at 373 (2d ed.1986). This may result in the release of someone who still poses a threat to society. The legislature required the jury to answer the special interrogatories upon rendering a not guilty verdict to prevent such a release from occurring. *See* Sammons, *Legislative Update*, 12 Colo.Law. 1251, 1252 (1983).

defendant was not guilty of the other charges are no longer important once the defendant is subject to incarceration. *Id.* Thus, the jury does not make a finding of not guilty by reason of impaired mental condition unless and until the jury concludes that the defendant is not guilty on all felony charges.[3]

## II.

Section 18–1–803(3) requires first that the jury make a finding of whether the defendant is guilty or not guilty of the charges. The statute clearly provides that only if the defendant is found not guilty on all felony charges should the court give the special interrogatories to the jury to determine if the defendant was found not guilty by reason of impaired mental condition. It is at that time, after the defendant is found not guilty of all felony charges, that the reasoning in *Thomson* applies and an informational instruction could be given.

In *Thomson,* we relied on the reasoning in *Lyles v. United States,* 254 F.2d 725 (D.C.Cir.1957). In *Lyles,* the jury had to decide between one of three verdicts: guilty, not guilty, or not guilty by reason of insanity. The court stated that "[j]urors, in common with people in general, are aware of the meanings of verdicts of guilty and not guilty.... But a verdict of not guilty by reason of insanity has no such commonly understood meaning." *Lyles,*

254 F.2d at 728. Because a not guilty by reason of insanity verdict is not commonly understood, the court affirmed an informational instruction to explain the meaning of this verdict to the jury. *Id.*

In *Thomson,* the jury had to decide whether the defendant was not guilty by reason of insanity.[4] We found the reasoning in *Lyles* persuasive and stated that "although an average juror understands the consequences of either a guilty or not guilty verdict, the average juror is not aware of the consequences of a verdict of not guilty by reason of insanity." *Thomson,* 197 Colo. at 233, 591 P.2d at 1032. We concluded that an informational instruction was needed to clarify any jury confusion as to the meaning of not guilty by reason of insanity. *Id.* at 233–34, 591 P.2d at 1032. Thus, *Thomson* allowed an informational instruction only to assist a jury confronted with a possible verdict other than guilty or not guilty. *Id.*

## III.

It is clear from a review of *Lyles* and *Thomson* that the decision to allow an informational instruction was predicated on the jury's need to be informed of the consequences when deciding whether the defendant was sane or criminally insane. In the present case, and under section 18–1–803(3), the *Thomson/Lyles* situation does not arise unless the jury is required to answer the special interrogatories.[5] Prior

3. The affirmative defense of impaired mental condition in the trial on the charges is treated as any other affirmative defense (*e.g.,* self-defense, alibi, duress) in that the prosecution has the burden of proving all the elements of the crime charged and disproving the affirmative defense beyond a reasonable doubt. The difference between the defense of impaired mental condition and other affirmative defenses occurs after a verdict of not guilty is entered. As to other affirmative defenses, the defendant is discharged from custody. In the impaired mental condition defense, the jury must answer the special interrogatories so that the court can determine if the defendant is to be discharged or committed to the department of institutions for treatment of a mental condition.

4. Under Colorado law, the issue of insanity is tried separately from the trial on the merits to a different jury. § 16–8–104, 8A C.R.S. (1986).

At the sanity trial, the jury must decide whether the defendant is sane or not guilty by reason of insanity. § 16–8–105(3), (4), 8A C.R.S. (1986).

5. The trial court followed the proper procedure in submitting the defense of impaired mental condition to the jury. The trial court concluded that the jury must first return a verdict as to the fundamental issue of guilty or not guilty and that the special interrogatories would be considered only if the jury returned a verdict of not guilty. Once the jury returned their verdict, the trial court stated that "we will retire ... to chambers and we will then work over the instructions concerning mandatory sentencing counts, if any, and the impaired mental condition special interrogatory or finding, if any." I agree that under § 18–1–803(3) the jury does not need to consider the special interrogatories unless they return a verdict of not guilty. *See People v. Collins,* 752 P.2d 93, 98 (Colo.1988).

to the special interrogatories, the jury is confronted only with a choice between guilty and not guilty. In *Thomson*, we reasoned that the average juror understands these two verdicts. *Thomson*, 197 Colo. at 233, 591 P.2d at 1032.

For these reasons, I disagree with the majority's unnecessary expansion of the *Thomson* rule. I therefore dissent.

I am authorized to say that Chief Justice ROVIRA and Justice ERICKSON join in this dissent.